UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Jean Linhares,                               *
                                             *
                Plaintiff,                   *
                                             *
        v.                                   *        Civil Action No. 1:20-cv-10899-IT
                                             *
Kilolo Kijakazi,[1] Acting Commissioner of  *
the Social Security Administration,          *
                                             *
                Defendant.                    *

MEMORANDUM & ORDER

September 29, 2021

In this action, Plaintiff Jean Linhares asks the court to reverse the Commissioner of

Social Security's final decision and to find Linhares disabled pursuant to sentence four of 42

U.S.C. § 405(g). Mot. for Order Reversing the Commissioner's Decision ("Mot. Reverse")

[#21]. Alternatively, Linhares asks the court to reverse the final decision and remand the action

for a rehearing. Id. Defendant Acting Commissioner of the Social Security Administration

("Commissioner") moves to affirm the final decision, asserting that the correct legal standard

was applied, and the decision is supported by substantial evidence. Mot. to Affirm the Decision

of the Commissioner ("Mot. Affirm") [#25]. For the following reasons, the pending motions are

ALLOWED in part and DENIED in part, the decision of the Commissioner is AFFIRMED in

part and VACATED in part, and the matter is remanded for further consideration.

---

[1] Plaintiff brought this action against former Commissioner Andrew Saul; Andrew Saul is no
longer the Commissioner and the court substitutes Acting Commissioner Kilolo Kijakazi for
former Commissioner Saul. See Fed. R. Civ. P. 25(d).

I.   Procedural Background

On May 1, 2018, Linhares submitted to the Social Security Administration applications for a period of disability and disability benefits and for supplemental security income, alleging a disability onset date of September 1, 2017. Administrative Record ("A.R.") 18 [#18]; see also id. at 196-206. On July 16, 2018, the Social Security Administration denied both claims and on August 16, 2018, upon Linhares' request for reconsideration, the Social Security Administration again denied her claims. Id. at 127-32, 136-46.

Plaintiff timely requested an oral hearing, which took place before an Administrative Law Judge ("ALJ") on February 13, 2019. Id. at 52, 147-48, In a March 5, 2019 written decision, the ALJ found Linhares was not disabled within the meaning of the Social Security Act from September 1, 2017, the alleged onset date, through the date of the ALJ's written decision. Id. at 18-28.

Linhares requested review of the ALJ's decision, and the Social Security Administration Appeals Council denied her request on March 12, 2020. Id. at 1-7.

On May 12, 2020, Linhares filed the Complaint [#1] in this action.

II.   Background

A.   Age, Education, and Work History

Linhares was fifty-four years old when she submitted her applications for disability benefits; she has a twelfth-grade education; and she worked as an accounting clerk and in customer service for the fifteen years prior to the alleged onset of her disability. A.R. 196, 218 [#18].

B. <u>Medical History</u>

1. <u>Back and Hip Pain</u>

On June 26, 2017, Linhares went to Southcoast Hospital's emergency department complaining of severe lower back pain radiating down her right leg. <u>Id.</u> at 493-96; <u>see also</u> <u>id.</u> at 386, 389. Plaintiff's treating physicians in the emergency department found her lumbar spine tender on exam, and noted Linhares had a positive right straight leg raise test. <u>Id.</u> at 495.

On July 3, 2017, Linhares' primary care physician, Dr. Pedro Falla, reported that a magnetic resonance imaging ("MRI") exam of her lumbar spine showed degenerative disc bulge and bilateral facet arthrosis at L3-4 through L5-S1, causing mild central canal stenosis and mild left-sided/moderate right-sided neural foraminal narrowing, but no compression fracture or spondylolisthesis. <u>Id.</u> at 363-64. Dr. Falla also reported that an MRI on Linhares' right hip showed mild bilateral hip joint space narrowing, tendinosis, and mild edema suggestive of low-grade muscle strain, but no fracture or dislocation. <u>Id.</u> at 365-66.

On August 28, 2017, Linhares reported significant pain in her right hip to Dr. Falla. She acknowledged, however, that the pain medication she had been prescribed was, for the most part, effective, and that she was not doing physical therapy. <u>Id.</u> at 380-81. She was directed to continue taking pain medication as needed. <u>Id.</u>

During a series of appointments in January 2018 with Dr. Falla and Dr. Roger Pocze (the orthopedic surgeon to whom Linhares was referred for consultation), Linhares reported pain in her right hip and lower back. She stated her medication was effective, but not when the pain was severe. <u>Id.</u> at 368-70 378, 380-82, 416. During these appointments, Linhares' doctors reported Linhares' disc degeneration and spinal stenosis, but also reported negative straight leg raising tests, normal flexion, and no tenderness of the hip flexor muscles. <u>Id.</u> at 370, 380, 416. On

January 25, 2018, Dr. Pocze ordered an X-ray of Linhares' right hip and noted mild right hip osteoarthritis. Id. at 366. Linhares was prescribed pain medication for her hip to use as needed. Id. at 369-71.

Linhares began seeing Dr. Parakrama Ananta, a physiatrist, for her back and hip pain in February 2018. Id. at 453. Between February and July 2018, Linhares reported pain in her back and right hip and Dr. Ananta noted Linhares' symptoms were consistent with spinal stenosis and neurogenic claudication and recommended steroid injections, physical therapy, and pain medication. Id. at 449-54. On July 17, 2018, Linhares reported significant improvement in her symptoms after an epidural steroid treatment. Id. at 449; see also id. at 378.

On August 2, 2018, during an appointment with Dr. Ananta, Linhares again complained of pain in her hip and back. Id. at 448. Dr. Ananta recommended physical therapy and stretching for Linhares' hip discomfort and noted Linhares gait was "normal," and her range of movement was "free and full with flexion, extension, and lateral flexion." Id. at 448-49.

On August 8, 2018, Dr. Ananta completed a checklist residual functional capacity form indicating Linhares could occasionally lift and carry up to 10 pounds, sit for 30 minutes at a time, stand for 15 minutes at a time, walk for 15 minutes at a time, and, during an 8-hour workday, could sit for 4-5 hours, stand for 1 hour, and walk for 30 minutes. Id. at 460-61. Dr. Ananta stated Linhares could never climb stairs, ramps, or ladders; could never stoop, kneel, crouch, or crawl; and could balance occasionally. Id. at 463. Dr. Ananta opined he had sufficient information to form the opinion that the limitations were first present on March 22, 2018, and would last or had lasted for 12 consecutive months. Id. at 465.

On August 13, 2018, Dr. Ilonna Rimm, a state agency medical consultant, performed a residual functional capacity assessment[2] and opined that Linhares' back disorder was severe with worsening back pain with walking/sitting for prolonged period, but that Linhares could perform light lifting, by frequently lifting and carrying up to 10 pounds; occasionally pull 20 pounds; and in an eight-hour day could stand or walk for four hours and sit for six hours. Dr. Rimm found further that Linhares could occasionally climb stairs, ramps, or ladders, could occasionally stoop, kneel, crouch and crawl, and had no balance limitations. Id. at 113-24.

During appointments with Dr. Ananta on September 27, 2018, October 18, 2018, and November 1, 2018, Linhares complained of low back pain with radiating symptoms down her legs and Dr. Ananta noted degenerative disc bulge, spinal stenosis, and neurogenic claudication. Dr. Ananta also noted that Linhares' gait was normal, her range of motion was free with flexion, extension, and lateral flexion, her straight leg raise tests were negative, and her muscles were functioning normally when resistance was applied. Id. at 36, 38-39.[3] Notes from the November 1, 2018 appointment describe Linhares' "limited response to the [epidural] injection" and state Dr. Ananta recommended Neurontin to alleviate the "neuropathic component of the pain." Id. at 36.

On November 11, 2018, Linhares had another lumbar spine MRI which showed mild diffuse bulging discs causing mild neural foraminal narrowing, mild impingement upon the

---

[2] This residual functional capacity assessment was performed as part of Linhares' request for reconsideration and was based on an analysis of Linhares' medical records, including Dr. Ananta's residual functional capacity assessment. See A.R. 113-125 [#18]. The conclusions were largely the same as those of the state agency medical consultant who performed a first assessment prior to Linhares' initial denial of benefits. See id. at 75-85.

[3] These treatment notes (and the remaining treatment notes discussed in this subsection) were not part of the administrative record before the ALJ, but were submitted by Plaintiff to the Appeals Council in support of her appeal. See A.R. 33 [#18]. The court addresses below whether they should be considered by the ALJ as part of sentence four remand under 42 U.S.C. § 405(g).

exiting nerve root of L4-LS, mild/moderate spondylosis, and diffuse bulging but no impingement on the exiting nerve root on the L5-S1. Id. at 502-03.

During a December 3, 2018 appointment with Dr. Ananta, Linhares complained of the same lower back pain with radiating symptoms down her legs. Id. at 34. Dr. Ananta noted that the November 2018 MRI showed "mild impingement upon the exiting nerve roots" but did not "show any significant changes." Id. Dr. Ananta also noted Linhares had a normal gait, her range of motion was free and full with flexion, extension and lateral flexion, she had a negative straight leg raise test, and her motor exam showed no limitations. Id.

On May 16, 2019, Linhares had an appointment with Dr. Pocze. Id. at 12-14. Dr. Pocze noted Linhares reported that physical therapy had been somewhat helpful with her back pain, but that the injections had not been helpful. Id. at 13. Dr. Pocze reported Linhares had some limitations in her range of motion and experienced moderate pain during the range of motion assessment, but also noted Linhares' gait was normal, she had normal sensation in her lower extremities, her straight leg raise tests in both a sitting and supine position were negative, and the results of her motor exam were normal. Id. at 13.

2. Hypertension

Dr. Falla's treatment notes from April 2018 state Linhares' hypertension was managed and controlled with medication and that although she sometimes experienced headaches, she did not experience blurred vision, shortness of breath, or chest pain. Id. at 377-79.

3. Anxiety and Depression

In July 2018, Dr. Falla noted Linhares' depression was "stable" and managed by medication. Id. at 438.

On August 13, 2018, Dr. Karin Towers, a state agency psychologist, concluded Linhares' psychiatric functioning was not severely impaired. Id. at 119-20. Dr. Towers stated Linhares reported symptoms of anxiety and depression but that the available evidence indicated "no significant functional limitations." Id.

4. Ankle Pain

Linhares has reported ongoing pain in her left ankle, id. at 60-61, following a July 2015, fracture that required surgical repair. Id. at 21, 332.[4] Linhares worked from home during some of her recovery period. Id. at 333-36, 344, and by March 29, 2016, her ankle had improved enough for her to return to work full-time. Id. at 357.

The record contains no treatment records for her left ankle after 2016, id. at 394, and during the hearing before the ALJ, Linhares stated she had not received additional treatment since 2017 because there was nothing more doctors could do, id. at 61.

III. Legal Standard

A. Standard of Review

Under sentence four of 42 U.S.C. § 405(g), a district court has the power to affirm, modify or reverse a decision of the Commissioner, with or without remanding the cause for a rehearing. The district court must make its decision based on the pleadings and transcript of the

---

[4] In 2015, during the first two and a half months post-surgery, Linhares' doctors noted her left ankle was healing and her symptoms were improving. Id. at 333-37. On October 13, 2015, however, Linhares reported increased pain in her left ankle and other worsening symptoms. Id. at 338. Her treating physician indicated that X-rays showed Linhares' left ankle was continuing to heal and no breaks were noted. Her physician recommended Linhares continue physical therapy, elevate her left ankle, and take ibuprofen. Id. Between October 29, 2015, and February 4, 2016, Linhares continued to report pain and swelling in her left ankle, with some periodic improvements in her symptoms. Id. at 340-45. On February 4, 2016, Linhares had surgery to remove the screws that were placed in her ankle during the surgery. Id. at 351-52. After the screws were removed, Linhares reported improvements in her left ankle but noted some lingering discomfort in her left ankle and left foot. Id. at 354.

record before the Commissioner; when the Commissioner's findings are supported by "substantial evidence" and conform to relevant law, they are conclusive. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018); see also Rodrigues Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (The court must affirm the Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

Substantial evidence review is deferential; while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy, 887 F.3d at 13. Substantial means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citation and quotation omitted). However, the ALJ's decision is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court can reverse the Commissioner's final decision when the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or deny benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001). However, if a court reverses the Commissioner's decision but there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for further proceedings. Id. at 12 ("When an agency has not considered all relevant factors in taking action, or has providing insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted).

B. Social Security Disability Standard

An individual is considered disabled if he or she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether or not an individual is disabled. See 20 C.F.R §§ 404.1520(a), 416.920(a).

> The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience.

Sastre v. Astrue, 870 F. Supp. 2d 267, 274 (D. Mass. 2012) (citing 20 C.F.R. § 416.920).

In the first four steps the claimant bears the burden to show he or she is disabled within the meaning of the Social Security Act. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "Once the claimant has established that he [or she] is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy." Sastre, 870 F. Supp. 2d at 274.

IV. The ALJ's Decision

The ALJ proceeded through the five-step analysis under the Social Security Act, 20 CFR §§ 404.1520(a) and 416.920(a), to determine whether Linhares was disabled from September 1, 2017, through the date of the decision. A.R. 18-19 [#18]. At the first step, the ALJ determined Linhares had not engaged in substantial gainful activity since September 1, 2017. Id. at 20. At the second step, the ALJ determined Linhares had one severe impairment, degenerative disc

disease of the lumbar spine, but that her other impairments – hypertension, osteoarthritis of the right hip, left ankle disorder, anxiety, and depression – were non-severe. Id. at 21-23.

At the third step, the ALJ determined Linhares' severe impairment did not meet or medically equal the severity of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23.

At the fourth step, the ALJ determined Linhares had the residual functional capacity to occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; sit for six hours; stand or walk for a total of four hours in an eight-hour workday; occasionally push or pull with the bilateral lower extremity; occasionally climb ramps, stairs, ladders, ropes and scaffolds; and occasionally balance, kneel, stoop, crouch, and crawl. Id. The ALJ also determined Linhares must avoid concentrated exposure to hazards such as heavy machines, moving mechanical parts, and unprotected heights. Id.

Based on Linhares' residual functional capacity, at the fifth step of the analysis, the ALJ determined Linhares was capable of performing her past relevant work as an Office Clerk and Customer Service Representative. Id. at 27. The ALJ then concluded Linhares had not been under a disability from September 1, 2017, through March 5, 2019, the decision date. Id. at 28.

V.   Analysis

Linhares argues the ALJ committed reversible error by (1) improperly determining at step 3 that her impairment did not meet or medically equal the severity of the listing for § 1.04, disorders of the spine; (2) giving inadequate weight to Linhares' treating physician's opinion and failing to consider the impact of Linhares' nonsevere impairments in arriving at Linhares' residual functional capacity at step 4; and (3) failing to assess Linhares' disability under the

appropriate rules. Mem. in Support Mot. to Reverse 5-9 [#22]; see also Reply to Mot. to Affirm 1-2 [#27].

A.  Whether Linhares' Impairment Meets or Medically Equals the Severity Listing for Disorders of the Spine

The ALJ found Linhares' degenerative disk disease did not have sufficiently severe objective findings of functional limitations to consider Linhares' presumptively disabled at step 3 of the analysis. A.R. 23 [#18]. Linhares disagrees, pointing to her 2018 MRI as evidence of nerve root compression and to other treatment records as evidence she satisfies the balance of the § 1.04A criteria. Mem. in Support Mot. Reverse 6 [#22]. Linhares also argues the ALJ should have obtained updated medical opinions from a medical expert prior to determining whether her impairment met or medically equaled the listing for § 1.04; and that the ALJ's reliance on state agency medical consultants was improper because those consultants did not consider all of her medical records. Id. The Commissioner states Linhares' impairment does not satisfy § 1.04's criteria, and even if it did, Plaintiff cannot demonstrate she satisfied the criteria for a continuous 12-month period. Mem. in Support Mot. Affirm 7 [#26].

To meet the criteria of § 1.04A, a claimant must show he or she has a disorder of the spine resulting in a compromise of a nerve root with:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A.[5]

---

[5] The alternative tests under §§ 1.04B and C are not applicable here where there is no evidence of arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. Cf. Mills v. Apfel, 244 F.3d 1, 6 (1st Cir. 2001) (claimant has the burden to produce evidence that he meets the requirements of a listed condition).

"To satisfy a listing, a claimant must present evidence of medical findings that meet all specified medical criteria or are equal in severity to all the criteria for the most similar listed impairments." Avila v. Berryhill, Civ. Action No. 18-10898-FDS, 2019 WL 2537638, at *8 (D. Mass. June 20, 2019) (citation omitted). "An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "In addition, the claimant must have suffered, or be expected to suffer, all the elements of a listed impairment continuously for twelve months." Myers v. Berryhill, Civ. Action No. 18-cv-30122-KAR, 2019 WL 3976017, at *15 (D. Mass. Aug. 21, 2019) (citing 20 C.F.R. §§ 416.925(c)(3) & (4)).

1.  Nerve Root Impingement

Plaintiff relies on the November 11, 2018 MRI as evidence her impairment meets or medically equals § 1.04. Mem. in Support Mot. Reverse 6 [#22] (citing A.R. 502-03 [#18]). The MRI report indicated "mild impingement upon the existing nerve roots" at L4-5, spondyloarthropathy at L5-S1, and "nerve impingement" at Ls.S1. A.R. 503 [#18]. This nerve root impingement establishes nerve root compression under § 1.04A. See Reply to Mot. to Reverse 1 [#27] (citing Disorders of the Spine, 20 CFR Pt. 404, Subpt. P, Appendix 1, § 1.04). Accordingly, where there is no evidence the degenerative disc disease is reversible such that Plaintiff would not continue to suffer from the compression for twelve months or more, Plaintiff has likely satisfied the nerve compression component of § 1.04.[6]

---

[6] Linhares has also made a sufficient showing of neuroanatomic distribution of pain as she has consistently described her pain as radiating into her lower extremities. See A.R. 34, 36, 38-39, 369-70, 383, 385, 389, 448-53 [#18] (treatment notes from June 2017 through December 2018 describing pain radiating down to Linhares' lower extremities).

2.   Involvement of Lower Back & Motor, Sensory, and Reflex Loss

Because Linhares alleges her lower back is involved in her spinal disorder, she must also

show positive straight leg tests in sitting and supine positions. See 20 C.F.R. Part 404, Subpart P,

Appendix 1, Listing 1.04(A). Linhares has a single positive straight leg test from June 26, 2017,

prior to the claimed onset of her disability, id. at 495, but all other straight leg raise tests, in both

sitting and supine positions, between June 2017 and May 2019, are negative, id. at 13, 34, 36,

38-39, 370, 383, 386, 448-53.

Linhares has also failed to show she suffered motor, sensory, or reflex loss for a twelve-

month period. Linhares points to limited lumbar range of motion due to pain on January 25,

2018, id. at 370; however, there are other records during the relevant time period showing

Linhares' demonstrated normal reflexes, strength, and sensation, id. at 34, 36, 38-39, 448-52.

Because the record fails to show Linhares had positive straight leg tests or suffered motor

or reflex loss for twelve months, the ALJ's finding that Linhares' impairment did not meet or

medically equal a listing in § 1.04 is supported by substantial evidence. See Ortiz v. Astrue, Civ.

Action No. 12-11359, 2013 WL 772677, at *4 (D. Mass. Feb. 27, 2013).

3.   Whether the ALJ Should Have Considered More or Different Evidence

Linhares next argues the ALJ should have obtained an updated medical opinion before

finding Linhares' impairment did not meet or medically equal § 1.04. The ALJ reviewed

extensive records from Linhares' treatment and concluded, based on this evidence, that Linhares'

impairment did not meet or medically equal the listing in § 1.04. While ALJs "may ask for and

consider evidence from medical experts" about an individual's impairments and the severity of

the impairments, upon finding the evidence does not support the conclusion that the impairment

meets a listing, an ALJ is not required to "obtain [medical expert] evidence . . . prior to making a

step 3 finding that the individual's impairment(s) does not medically equal a listed impairment."
Soc. Sec. Ruling (Ssr) 17-2p: Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings
& Appeals Council Levels of the Admin. Rev. Process to Make Findings About Med.
Equivalence, SSR 17-2P (S.S.A. Mar. 27, 2017).

Linhares also argues the ALJ erred by relying on the state agency medical consultant's
opinions because the consultant did not consider relevant medical records. Mem. in Support Mot.
Reverse 6 [#22]. Linhares does not explain, however, how review of these records would have
changed state agency consultant's assessment. The records at issue, from Southcoast Health, are
largely duplicative of records the state agency consultant reviewed. See e.g., A.R. 474-94; 500-
02 [#18] (describing Linhares' ankle pain, ankle surgery, and recovery); id. at 497 (describing
Linhares' treatment for her hip and back pain, including epidural shots and pain medication).
These Southcoast records do provide some additional, relevant evidence of Linhares'
impairment, namely a positive straight leg raise test from a June 2017 appointment, id. at 495,
but the ALJ specifically referenced the positive straight leg raise test in her opinion, id. at 24.
Given the ALJ's independent review of Linhares' medical records, including the Southcoast
records, the ALJ's reliance on the state agency consultants' recommendation as a part of the
ALJ's analysis does not undermine the ALJ's conclusions as to the severity of Linhares'
impairment at step 3.

B. Residual Functional Capacity Assessments

Linhares contends the ALJ's residual functional capacity assessment was not supported
by substantial evidence because the ALJ did not give adequate weight to Linhares' treating
physician's residual functional capacity assessment, did not consider the impact of Linhares'

nonsevere impairments, and improperly rejected Linhares' statements concerning her pain and its limiting effects. Mem. in Support Mot. Reverse 7-8 [#22].

    1.   Medical Opinions and Linhares' Nonsevere Impairments

    "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitation or restriction." 20 C.F.R. § 416.913(a)(2). When there are inconsistencies in the evidence, including medical opinions, the ALJ is obligated to weigh all the evidence, id. § 416.920c(b), including the opinions of state agency medical or psychological consultants and the claimant's treating physicians, but is not bound by these opinions, id. §§ 416.920c(a)-(c) & 404.1520c(a)-(c). The ALJ must articulate how he or she "considered the medical opinions or prior administrative findings from that medical source"; "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings"; and if two opinions are equally supported and consistent with the record but arrive at different conclusions "articulate how [he or she] considered the other most persuasive factors" to make a determination. Id. § 416.920c(b); see also § 404.1520c(b). "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate." Nicole C. v. Saul, No. CV 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(b)(2)); see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 92 Fed. Reg. at 5854. ("A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not ... persuasive regardless of who made the medical opinion.").

The ALJ considered the August 2018 opinions of the state agency physicians and Linhares' treating physician, Dr. Ananta, and found a residual functional capacity generally as described by the state agency physicians. A.R. 25-27 [#18].[7] Where Dr. Ananta concluded that Linhares could sit for 30 minutes at a time, and could sit for 4-5 hours during an 8-hour workday, the ALJ adopted the state agency consultant's conclusion that she could sit for 6 hours; where Dr. Ananta concluded that Linhares could stand or walk for 15 minutes at a time, stand for 1 hour, and walk for 30 minutes in a workday, the ALJ adopted the state agency consultant's conclusion that she could stand or walk for 4 hours; where Dr. Ananta concluded that Linhares could never climb stairs, ramps or ladders and could never stoop, kneel, crouch, or crawl, the ALJ adopted the state agency consultant's conclusion that she could occasionally do these tasks; and where Dr. Ananta concluded that Linhares could occasionally lift and carry up to 10 pounds, and the state agency consultant concluded that she could frequently lift and carry up to 10 pounds, the ALJ concluded that she could occasionally lift and carry 20 pounds and frequently lift and carry up to 10 pounds.

The ALJ explained that she found Dr. Ananta's opinion "not consistent with the claimant's routine and conservative treatment history, improvements with injections, and largely benign physical examinations without neurological deficits." Id. at 27-28. The ALJ found the state agency consultant's opinion "consistent with the overall weight of the evidence of record," including treatment records describing Linhares' impairments as "generally remain[ing] stable" and medical evaluations documenting fewer limitations in Linhares' range of motion and

---

[7] Neither residual functional capacity assessment took into account Linhares' November 2018 MRI showing nerve impingement as both assessments took place in August 2018.

neurological functioning than would require the restrictions set in Dr. Ananta's residual functional capacity assessment. Id.

While the ALJ's articulation supports her adoption of the state agency consultant's findings over those of Dr. Ananta regarding Linhares' range of movement, the ALJ does not explain why the durations given by the state agency consultant for sitting (up to six hours) and walking/standing (up to four hours) are supported by the medical record. Indeed, the state agency consultants stated that Linhares back disorder was severe and that she suffered from worsening back pain with walking/sitting for prolonged period, and offered no explanation for the durations selected. Moreover, while the ALJ stated she considered all of Linhares "severe and non-severe impairments, both singly and in combination," id. at 27, neither she nor the state agency consultant explained how Linhares' nonsevere ankle impairment was considered in determining Linhares asserted capacity to stand and walk for a total of four hours in an eight-hour workday. Consideration of an ankle impairment appears to be particularly relevant to a finding that Linhares can be on her feet for four out of eight hours in a workday. See 20 C.F.R. § 404-1545(a)(2).[8]

Finally, the ALJ offered no explanation for her finding that Linhares could lift 20 pounds occasionally where both Dr. Ananta and the state agency consultant suggested that Linhares could lift no more than 10 pounds and the ALJ pointed to no other evidence in support of this conclusion.

---

[8] Linhares also argues the ALJ failed to take into account her anxiety and depression in determining the residual functional capacity. Mem. Mot. Reverse 7 [#22]. However, where the ALJ notes in her opinion that, based on treatment records from Linhares' treating physicians and the state agency consultant's assessment, her anxiety and depression were both stable and treated, the ALJ's finding that these psychological impairments did not affect Linhares' residual functional capacity is supported by substantial evidence. A.R. 27 [#18].

Accordingly, the court finds the ALJ's residual functional capacity finding is not supported by substantial evidence; vacates the ALJ's decision at step four; and remands the action for reconsideration at step four.

2.      Linhares' Statements Concerning Her Impairments

Linhares also contends the ALJ erred by discounting Linhares' testimony describing the intensity, persistence, and limiting effects of her pain given the state agency physicians' finding that Plaintiff has "spinal stenosis and neurogenic claudication, worsening back pain with walking/sitting for prolonged periods." See Mem. in Support Mot. Reverse 8 [#22]; see also A.R. 83 [#18].

Before an ALJ may disregard a claimant's allegations of pain and specific symptoms, the ALJ must articulate "specific findings as to the relevant evidence he [or she] considered in determining to disbelieve" the claimant. Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). "A proper credibility determination is entitled to deference." Sastre, 870 F. Supp. 2d at 278 (citations omitted).

In the ALJ's written opinion, she described the evidence in the record: medical records of Linhares' treating physicians documenting Linhares' physical impairment and also improvements in Linhares' condition with treatment, including steroid injections, and pain medication; that her treatment history had not included surgical interventions and had been "conservative"; that Linhares was not currently taking pain medication; and that while physical examinations consistently documented tenderness and a positive straight leg test on one occasion, examinations had also consistently shown "normal gait, intact strength and sensation, and no acute neurological deficits." A.R. 24-26 [#18].[9] The ALJ then considered the impairments

---

[9] The relevant portion of the ALJ's opinion states the following:

and how they would affect Linhares' ability to work, noting that while her impairment "more than minimally affects her ability to engage in work related activities," the ALJ accounted for Linhares' "severe physical impairment through the exertional, postural, and environmental limitations contained within the residual functional capacity" and that the evidence of her impairment "does not support the degree of symptoms and functional limitations alleged" and "falls short of demonstrating the existence of pain and limitations that are so severe that the claimant cannot perform any work on a regular and continuing basis." Id. at 26.

While the ALJ's credibility determination is entitled to deference when supported by objective evidence, Sastre, 870 F. Supp. 2d at 278 (citations omitted), where the action is being remanded to reconsider the residual functional capacity and exertional limitations, Linhares subjective complaints should be reconsidered as well. Notably, these subjective complaints are now further supported by additional treatment records from Drs. Ananta and Pocze documenting appointments that took place between September and December of 2018 (Dr. Ananta) and in May 2019 (Dr. Pocze) that suggest that Linhares' pain is not managed with epidural injections or pain medications.

---

I have thoroughly evaluated the record, listened to the claimant's subjective complaints, and assessed the objective evidence in this case (See SSR 16-3p). The medical evidence falls short of demonstrating the existence of pain and limitations that are so severe that the claimant cannot perform any work on a regular continuing basis. The record reflects complaints of back and right leg pain by the claimant; however, the substantial evidence of record fails to support the claimant's testimony regarding the severity and resulting limitations. Overall, I find that the foregoing evidence does not tend to support the claimant's allegations of disabling physical impairments.

A.R. 26 [#18].

VI.   Whether Linhares' Combined Conditions Support a Finding of Disability under the Grid

Linhares argues she should have been found disabled under the Medical-Vocational Guidelines, or grid.[10] Linhares contends that the ALJ should have found at step four that Linhares' residual functional capacity limits her to sedentary work and renders her unable to perform her past relevant work, and because she is in a category of closely approaching advanced age, has limited transferable skills, and has a high school education only, under the grid, she should be found disabled unless there would be very little, if any, vocational adjustment required for a sedentary position. Mem. in Support Mot. Reverse 8 [#22]; see also 20 C.F.R. Appendix 2 to Subpart P of Part 404 ("grid rule"), 200.00. Because the court is vacating the ALJ's decision at step four and remanding for further consideration, this argument is now premature.

VI.   Conclusion

For the foregoing reasons Linhares' Motion [#21] is DENIED in part and ALLOWED in part, the Commissioner's Motion [#25] is DENIED in part and ALLOWED in part, and the decision of the Commissioner is AFFIRMED in part and VACATED in part. The action is remanded to the Commissioner for further consideration consistent with the reasons set forth in this opinion.

---

[10] The Medical-Vocational Guidelines, or grid, is used "in evaluating the individual's ability to engage in substantial gainful activity" and "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Appendix 2 to Subpart P of Part 404, 200.00. For example, where an individual is approaching, or has reached, advanced age, has limited transferable skills, has a residual functional capacity restricting him or her to sedentary work, and can no longer perform his previous work, the grid rule dictate that the coincidence of all these factors requires finding

IT IS SO ORDERED.

September 29, 2021                                                    /s/ Indira Talwani_____
                                                                      United States District Judge

---

the claimant is disabled unless there is little, if any, vocational adjustment required to adjust to a
job classified as sedentary. Id.